PATTERSON et ux. v. SYLVAN BEACH
CO. (No. 348.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 19, 1914. Rehearing Denied
Dec. 17, 1914.)

1. APPEAL AND ERROR (§ 630*)—TRANSCRIPT
—SUFFICIENCY.

The clerk's transcript and statement of facts sent by the clerk of the Court of Appeals to counsel for respondents was not returned, having been lost. As a substitute for the lost papers, they tendered a duplicate copy of the statement of facts which had been filed in the court below, but which was not certified by the clerk of the lower court, although appellants' counsel agreed that it was a true and correct copy of the ·record. *Held* that, as appellee's counsel could easily have procured a substitute transcript regularly certified, but failed to, though the Court of Civil Appeals advised them that the duplicate copy would not be considered, the copy will be rejected, and the statement of the nature and result of the suit contained in appellants' brief and the statements supporting the assignments of error will be treated as correct.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2723; Dec. Dig. § 630.*]

2. JUDGMENT (§.248*)—CONFORMITY TO PLEADING.

Where a corporation sought to set aside conveyances made by its officers to defendants on the ground that the officers were not authorized to make the conveyances, and that the consideration was wholly inadequate, and defendants asserted that the contracts were entered into fairly for the consideration paid, a money judgment affirming the deeds, but allowing the corporation to recover the claimed deficiency in the purchase price, must be reversed, being without support in the pleadings or evidence.

[Ed. Note.—For other cases, see Judgment. Cent. Dig. § 434; Dec. Dig. § 248.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the Sylvan Beach Company against J. T. Patterson and wife. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Cooper, Merrill & Lumpkin and John R. Burkett, all of Houston, and Brown & Terry, of El Paso, for appellants. A. B. Wilson and Cole & Cole, all of Houston, for appellee.

HIGGINS, J. [1] After the submission of this case, it was discovered that the clerk's transcript and statement of facts were missing from the files, having been sent some months previous by the clerk of this court to counsel for appellee,· who had failed to return same. Their attention was called to the matter, and it developed that same had been lost or misplaced by them, and thereupon an opportunity was afforded of substituting the same. As a substitute for the lost papers, they tendered a duplicate copy of statement of facts which had been filed in the trial court as by law required, together with what purported to be a copy of the original clerk's transcript. This tendered clerk's transcript was without any certificate by the clerk of the lower court, but it was agreed by appellants' counsel that it was a true and correct copy of the record as originally prepared by the clerk of the lower court.

In view of the fact that a clerk's transcript regularly certified could have been readily procured from the clerk of the lower court and tendered as a substitute for the lost one, and being of the opinion that it was advisable the substituted transcript should be so authenticated, and a mere agreement of counsel that the same was correct should not be accepted in lieu of a certificate, the clerk

was instructed to advise appellee's counsel that the substitute tendered for the clerk's transcript was not regarded as sufficient, and to instruct them that such transcript must be regularly certified to by the clerk of the lower court as in case of an original transcript. Counsel were so advised, but they have seen fit to disregard this holding of the court, and have again tendered the copy which we had theretofore indicated was not acceptable, and moved the court to allow the same and the duplicate copy of the statement of facts to be filed as a substitute for the original record. Believing, for the reason above indicated, that the proposed substitute clerk's transcript is insufficient, the motion to substitute will be overruled, and it becomes necessary for us to dispose of the appeal as best we may without the record. We will therefore accept as correct the statement of the nature and result of the suit contained in appellants' brief, together with the statements supporting the various assignments of error as being correct, and will dispose of the assignments upon such assumption.

Suit was instituted by Sylvan Beach Company against J. T. Patterson and Nelle W. Patterson, his wife; the cause of action being stated as follows:

First. Suit in ordinary form of trespass to try title to lots 19 and 20, block 13, Sylvan Beach, First subdivision Johnson Hunter survey, Harris county, Tex., alleging ejectment, of date December 1, 1912.

Second. Seeking cancellation of two deeds to property above described, on ground of want of authority in officers of plaintiff's company to execute same, and alleging that first of said deeds was executed on December 21, 1911, by W. C. Porterfield, vice president of plaintiff's company, attested by H. M. Porterfield, as secretary of the company, conveying said lot 13 to appellant Nelle W. Patterson, for a recited consideration of $500, and that the second of said deeds was executed on May 18, 1912, by A. H. S. Talbot, vice-president of plaintiff company, and attested by J. T. Patterson, appellant, as secretary thereof, which deed also conveyed lot 19, above described, for a recited consideration of $500 cash; that the reasonable market value of said lots at time of execution of said deed was from $500 to $700 each, which fact was well known to appellant J. T. Patterson at the time; that neither of appellants paid any consideration for either of said deeds, or, in the alternative, they paid only the sum of $150 each for said lots; and that such consideration was so grossly inadequate as to render the deeds void on the ground that the officers of plaintiff's company were without authority to execute said deeds for a less consideration than the reasonable market value of the property, which fact is alleged to have been known to appellant J. T. Patterson at time deeds were executed.

Third. For alternative pleading, the petition alleged: "Plaintiff further represents to the court that said property hereinabove described has not been paid for by the defendants or either of them, and if the court should find that plaintiff is not entitled to recover said lots, then plaintiff is advised and believes that it has a right to have its equitable lien against said property established and enforced for the unpaid purchase money, which defendants should have paid plaintiff for said lots and which are due and owing plaintiff in the event the court should hold said deeds to be valid and binding upon the plaintiff."

The trial court's judgment was based upon this last-mentioned portion of the petition. Appellants answered by exceptions, plea of not guilty, and special plea that the lots were purchased from the plaintiff for an agreed consideration of $150 each, which was paid to and accepted by it by giving proper credit on an indebtedness from the company to J. T. Patterson, and the deeds in question were executed by proper officers of the company, with full knowledge of all the facts.

The cause was submitted to the court without intervention of a jury, and judgment rendered on June 11, 1913, in favor of appellee, establishing an indebtedness against appellants jointly in the sum of $708.75, with interest at 6 per cent., on account of unpaid purchase money for said lots, establishing an implied vendor's lien against the property above described, and ordering foreclosure in the usual form. From this judgment the defendants appeal, assigning as error:

First: "The court erred in rendering judgment in favor of plaintiff establishing and foreclosing an equitable lien on the lots in controversy, for the reason that such judgment is without pleading to support it, in this: That said pleading wholly fails to allege the existence of any agreement on the part of the defendants, or either of them, to pay to plaintiff as consideration for the lots in controversy, or either of them, any sum whatever in excess of the amount found by the court to have been paid by the defendant J. T. Patterson at the time the deeds were executed."

Second: "The court erred in overruling, and not sustaining, the special exception contained in the third paragraph of their amended answer, which points out the insufficiency of that part of plaintiff's first amended original petition which seeks the establishment and foreclosure of an equitable lien in favor of the plaintiff on the ground that said pleading fails to allege the existence of any agreement on the part of the defendants, or either of them, to pay to the plaintiff any consideration for the lots in controversy other than the cash consideration paid at the time the deeds were executed."

Third: That the judgment rendered by the court is wholly unsupported by the evidence, in that there is no evidence whatever of an agreement on the part of defendants to pay the company for the lots in controversy any consideration whatever other than the amount found by the court to have been paid at the time the deeds covering the lots were executed.

[2] The judgment of the court established the validity of the deeds under which appellants claim title to the lots in controversy, and found, as a fact, that appellant J. T. Patterson paid the company the sum of $150 for each lot at the time the deeds were executed, and that there was an unpaid balance of $350 due on each of the lots. The vice president of the company had full authority to execute deeds in behalf of the company, and it was the custom of Porterfield, as vice president, and later of Talbot, in the same capacity, to do so.

J. T. Patterson testified that he was sales manager of appellee company from March 20, 1911, until after execution of two deeds in question; that he purchased lot 20 from W. C. Porterfield, vice president, and A. H. S.

Talbot, general manager, of appellee company, for cash consideration of $150, which was charged to his account on the books of the company; that lot 19 was bought from Mr. Talbot, who was vice president and general manager of the company at that time, for a cash consideration of $150, which was likewise charged to his account; that Talbot had full charge of the office and business of the company, and that the company owed witness at the time from $700 to $800; and that the consideration for these lots was actually credited on his indebtedness. There was no evidence whatever of any agreement upon appellant's part to pay more than $150 for each lot.

The foregoing assignments are each sustained. There is no express agreement alleged upon which the court could base a finding and judgment that there was a balance of $350 due on the purchase price of each of the lots, nor are any facts alleged from which such an agreement might be implied. The mere fact that the officers of the company had conveyed the property for a consideration less than that at which they were authorized to sell for certainly would not imply an agreement upon the part of the vendee to pay the difference between the reasonable value of the lots and that actually paid. It seems this was the theory upon which the court entered judgment. The pleadings themselves are wholly insufficient to support the judgment, and the evidence likewise, as there is no evidence of an express or an implied agreement upon Patterson's part to pay more than the amount which he did pay.

Reversed and remanded.